UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIAN MORIN,<br>Plaintiff | : | CIVIL CASE NO.<br>3:24-CV-01244 (JCH) |
| v. | : | |
| TOWN OF FARMINGTON,<br>Defendant. | : | SEPTEMBER 16, 2025 |

**RULING ON DEFENDANT'S MOTION TO DISMISS (DOC. NO. 27)**

**I.   INTRODUCTION**

Plaintiff Brian Morin brings this action against the Town of Farmington ("Town") alleging two violations of The Americans with Disabilities Act ("ADA") and one violation of the Connecticut Fair Employment Practices Act ("CFEPA"). See Amended Complaint ("Am. Compl.") (Doc. No. 19). The Town moves to dismiss all of Mr. Morgan's claims. See Motion to Dismiss ("Mot.") (Doc. No. 27).  Mr. Morin opposes this Motion. See Memorandum of Law in Opposition to Motion to Dismiss ("Pl.'s Opp.").(Doc. No. 31). The Town responded to Mr. Morin's Opposition.  See Defendants' Reply Memorandum ("Def's Reply") (Doc. No. 32).

For the reasons discuss below, the Motion is denied as to Count 1 and 2 and granted as to Count 3.

**II.   BACKGROUND**

   A.   Factual Background

Mr. Morin was an employee of the Town working as a Building Maintenance Foreman.  Am. Compl. at ¶¶ 1,13.  Mr. Morin was qualified for every position he held with the Town.  See id. at ¶¶ 14, 15.  Mr. Morin was supervised by Jim Ruzbasin.  See

1

id. at ¶¶ 16,17.  Mr. Morin sustained a work-related hernia and notified the defendant. See id. at ¶¶ 19,20.  Mr. Morin underwent surgery, took one and a half months of workers compensation leave, and then returned to work.  See id. at ¶¶ 21-24.  The hernia substantially limited Mr. Morin's ability to bend and climb for over one year.  See id. at ¶ 70.  Upon returning to work, he alleges he was micromanaged and falsely accused of incompetence.  See id. at ¶ 25-29.  He alleges no accusations occurred before his medical leave.  See id. at ¶ 30.

Mr. Morin has a special needs child, and he alleges the Town was aware of his caregiving responsibilities.  See id. at ¶ 32-35.  His supervisor demanded 24/7 availability, which was not in the job description.  See id. at ¶¶ 36,37.  Mr. Morin stated that he could not be available on a 24/7 schedule due to his responsibilities of caring for his special needs child.  See id. at ¶ 38.  Mr. Morin alleges he was once late to work by one minute past 7 am, to ensure his daughter safely embarked upon the special needs school bus.  See id. at ¶ 72-75.  Mr. Morin made up the time at the end of his shift.  See id. at ¶ 76.  The Town is alleged to have been critical of the plaintiff for being tardy, despite a valid reason and making up the time.  See id. at ¶¶ 77,78.  In December of 2021, the Town, after being told by Mr. Morin that he needed to adjust his start time to ensure his daughter boarded her school bus, adjusted Mr. Morin's start time to 7:15 am. See id. at ¶ 78.  Mr. Morin did not request a second adjustment to his start time.  See id. at ¶ 80.  The Town subsequently adjusted Mr. Morin's start time to 7:30, stating that the second adjustment was to better align to the Town's needs.  See id. at ¶ 79.  In a performance review in June 2022, the Town was critical of Mr. Morin's attendance and punctuality.  See id. at ¶ 81.  Mr. Morin received a "4" evaluation/"requires

improvement." See id. at ¶ 82-83.  The supervisors' comments in the evaluation read: "had to change start time twice to be able to get to work on time." See id. at ¶ 84.  Mr. Morin's punctuality and attendance did not require improvement, and the Town did not adjust Mr. Morin's start time for the second time because Mr. Morin had an ongoing punctuality problem.  See id. at ¶¶ 85, 86.

The Town employs Will Young, who works in the same Department as the plaintiff.  See id. at ¶¶ 87,88.  Mr. Young worked under the same time and attendance rules as Mr. Morin.  Mr. Young is alleged to have clocked in for another employee who was late to work, yet Mr. Young was not reprimanded for this misconduct.  See id. at ¶¶ 89,90.  Mr. Young is not associated with an individual with a disability.  See id. at ¶ 91.

The Town had a comprehensive system for handling after-hours calls.  See id. at ¶ 39.  On February 6, Mr. Morin was questioned for missing a call on February 4.  He explained his phone malfunctioned.  See id. at ¶ 40.  Additionally, Mr. Morin explained that he would only be able to respond to such a call if he could find someone to watch his daughter.  See id. at ¶ 40.

On or about February 21, 2023, Mr. Morin was terminated.  See id. at ¶ 41.  On February 21, he was provided a letter stating that his position would be eliminated March 9, 2023, because the Town determined that the work performed by Mr. Morin could be done more expeditiously and cost effectively by other means.  See id. at ¶ 43. The letter referenced sections of the AFSCME contract on subcontracting and recall rights.  See id. at ¶¶ 44,45.  The Town said that subcontractors would take over Mr. Morin's job, despite the Collective Bargaining Agreement prohibiting replacement of union workers with subcontractors.  See id. at ¶¶ 48,49.  Additionally, though the

3

bargaining agreement required recall notice and mandatory hiring opportunities for any laid off employees, the Town failed to send notice of such opportunities. See id. at ¶¶ 50, 57-58. Mr. Morin was qualified for the open position and had obtained the required CDL license. See id. at ¶¶ 52-55. Mr. Morin learned of the open position and promptly notified the Town of his desire for the position. See id. at ¶ 59. The defendant did not rehire or recall Mr. Morin. See id. at ¶¶ 60,61. The defendant claimed the job position was no longer being filled. See id. at ¶ 62.

Throughout his employment, Mr. Moring performed satisfactorily. See id. at ¶ 63. He alleges he was terminated due to his perceived disability or association with a person with a disability. See id. at ¶ 64-65. Mr. Morin filed CHRO and EEOC charges on November 27, 2023. He received a CHRO release on April 30, 2024, and an EEOC right to sue letter on May 22, 2024. See id. at ¶ 67-70.

### B. Procedural Background

On November 4, 2024, Mr. Morin filed a Motion for Leave to file the Amended Complaint (Doc. No. 19). On December 3, 2024, defendant, the Town, filed a Motion to Dismiss the Amended Complaint. (Doc. No. 27). Mr. Morin on January 3, 2025, filed an Objection to the Motion to Dismiss. (Doc. No. 31). On February 6, 2025, The Town filed a Response to the plaintiff's Objection. (Doc. No. 32).

## III. STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor. See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020). However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. In deciding a motion to dismiss under Rule 12(b)(6), a complaint is deemed to include writings and documents attached to the complaint, referenced in the complaint, or integral to the complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

**IV.   DISCUSSION**

Count One – Disability Discrimination in Violation of ADA

To state a facially valid discrimination claim under the ADA, a plaintiff must allege sufficient facts permitting a reasonable inference that: (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [his] disability or perceived disability. Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869–70 (2d Cir. 1998)(internal cites omitted). The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §

5

12102(1). To meet the requirement of "being regarded as" having a disability, a plaintiff must establish that "he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C.A. § 12102(3)(A). However, an employee cannot satisfy the regarded-as prong where his or her impairment is transitory and minor. 42 U.S.C. § 12102(3)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

The Town argues that the Complaint fails to plausibly allege a claim of disability discrimination. To determine this, the court will examine the four factors regarding a prima facia claim.

      1.    The Town of Farmington is subject to the ADA

Neither party disputes the Town is subject to the ADA. Therefore, this prong is met.

      2.    Mr. Morin suffered, or was regarded as suffering, from a disability

Mr. Morin's Complaint alleges facts that his injuries were not objectively transitory and minor. His hernia was not minor and qualified as a disability. He missed one and a half months of work while recovering from his surgery. Am. Compl. at ¶ 23. The hernia and surgery substantially limited Mr. Morin's ability to bend and climb for over one year. See id. at 71. Bending and climbing is a substantial limitation in a major life activity. Thus, Mr. Morin has sufficiently pled a plausible claim that he meets the definition of disabled.

The Town alleges that these allegations are simply conclusory and show a transitory disability. Def. Reply at 7-8. The Town argues that the plaintiff's hernia was nothing more than transitory. See id. at 8. The Town relies on Percoco where a Motion to Dismiss was granted when the plaintiff's injuries were objectively transitory and minor. See, Percoco v. Lowe's Home Centers, LLC, 208 F. Supp. 3d 437 (D. Conn. 2015). However, the reliance on Percoco is unpersuasive. The Percoco Complaint alleged facts that the plaintiff's injuries resulted in only a weeklong absence from work and did not allege anything about the persistence of their injuries. Percoco v. Lowe's Home Centers, LLC, 208 F. Supp. 3d 437 (D. Conn. 2016).

In 2008, Congress amended the ADA and "instructed courts that the definition of disability . . . shall be construed in favor of broad coverage of individuals, and that an impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." See Woolf v. Strada, 949 F.3d 89, 94 (2d. Cir. 2020) (internal quotation marks and citations omitted). The "principal purpose" of these amendments was to "make clear that the substantial-limitation requirement in the definition of 'disability' is not an exacting one." Id. "Under the ADA, 'major life activities' include, but are not limited to, 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

> To determine what constitutes a "substantial limitation" of a major life activity, courts have looked to the EEOC regulations implementing the ADA. Although the regulations are not binding, courts in the Second Circuit afford them significant deference.

Norman v. NYU Langone Health Sys., 492 F. Supp. 3d 154, 163 (S.D.N.Y. 2020), aff'd, No. 20-3624-CV (L), 2021 WL 5986999 (2d Cir. Dec. 17, 2021).  The definition of disability is to be construed in favor of broad coverage and will include major life activities such as "performing manual tasks, . . . lifting, . . . and working." 42 U.S.C. § 12102(2)(A).  "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Parada v. Banco Indus. de Venezuela, C.A., 753 F.3d 62, 68 n. 3 (2d Cir.2014) (alterations and internal quotation marks omitted) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

     Mr. Morin has plausibly alleged that he meets the criteria for disability.  Mr. Morin described his hernia surgery and one and a half months of workers compensation leave.  Am. Compl. at ¶¶ 22,23.  Mr. Morin stated his limited ability to bend and climb for the duration of over one year.  See id. at ¶ 71.  In amending the ADA in 2008, Congress made it clear that the term disability should be construed in broad favor of individuals, and that the substantial limitation requirement should not be an exacting standard.  Woolf at 94.  Mr. Morin has plausibly alleged that he meets the definition by stating his injury, a hernia, which resulted in both significant time off work and temporary disability for over a year affecting a significant life activity, his ability to bend and move.  See id. at ¶¶ 23, 71.  Therefore, Mr. Morin is considered disabled under the ADA.  Because Mr. Morin is a person with a disability, he meets the prong for this test.[1]

---

[1] There is no reason to delve into whether he was considered disabled by his employer.  See generally Bellamy v. Gen. Dynamics Corp., No. 3:10CV1219 MRK, 2012 WL 1987171 (D. Conn. June 4, 2012).

3.      Mr. Morin was qualified to perform his job

Mr. Morin alleged he was qualified to perform his job and qualified to perform the later Capital and Highway Project Leader job posting. Am. Compl. at ¶¶ 14, 52. The Town does not dispute Mr. Morin's qualifications for either the job he held before being fired or for the job he applied for later. See generally Def. Reply. Therefore, Mr. Morin has alleged this prong of a claim under the ADA.

4.      Mr. Morin suffered an adverse employment action because of his disability or perceived disability.

The parties do not dispute that Mr. Morin's termination constituted an adverse employment action. Therefore, this prong is met.

In conclusion, Mr. Morin has adequately pled that: (1) the Town is covered by the ADA; (2) Mr. Morin suffered from a disability, a hernia, which substantially affected a major life function, within the meaning of the ADA; (3) Mr. Morin was qualified to perform the essential functions of his job (4) Mr. Morin was then fired, suffering an adverse employment action because of his disability. Therefore, the Town's Motion to Dismiss is denied.

B.      Count Two – Associational Discrimination in Violation of the ADA

The ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). To state a claim for associational discrimination under the ADA, a plaintiff must allege (1) that he was qualified for the job at the time of an adverse employment action; 2) that he was subjected to adverse employment action; 3) that he was known at the time to have a relative or associate with a disability; and 4) that the adverse

employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.  Kelleher v. Fred A. Cook, Inc., 939 F.3d 465, 468 (2d Cir. 2019), citing Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 432 (2d Cir. 2016).

Neither party disputes that (1) Mr. Morin was qualified for the job, nor that (2) Mr. Morin suffered an adverse employment action by being fired or by not being hired. Therefore, the first two prongs are satisfied.

To satisfy the third prong, the Town must know that Mr. Morin had a relative with a disability, here a special needs child.  Mr. Morin pleads that the Town knew of his child with special needs.  Am. Compl. at ¶¶ 32,33.  A child with a disability is one who experiences "one or more of a list of enumerated disabilities . . . and who . . . needs special education and related services."  We the Patriots United States v. Conn. Office of Early Childhood Dev., 76 F.4th 130, 160 (2d Cir. 2023).  Mr. Morin informed his supervisor that he needed time to ensure his daughter boarded the special needs school bus.  Am. Compl. at ¶ 78.  The Town first adjusted Mr. Morin's start time to 7:15 am as he requested.  Id.  Therefore, Mr. Morin has plausibly alleged that the Town was aware of his association with a child with a disability and subsequently moved Mr. Morin's start time to accommodate.

Finally, to satisfy the fourth prong, Mr. Morin must allege that the adverse employment action occurred under circumstances supporting a reasonable inference that the disabled relative was a determining factor in the employer's decision. Discriminatory motivation may be established by allegations of preferential treatment given to similarly situated individuals.  Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir.

10

2007).  Additionally, "[t]hough the ADA does not require an employer to *provide* a reasonable accommodation to the nondisabled associate of a disabled person, an employer's *reaction* to such a request for accommodation can support an inference that a subsequent adverse employment action was motivated by associational discrimination." Kelleher v. Fred A. Cook, Inc., 939 F.3d 465, 469 (2d Cir. 2019)(emphasis in original).  To state a claim, a plaintiff must have "at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of N.Y., 795 F.3d 297, 311 (2d Cir. 2015).

    In a formal evaluation of his performance, Mr. Morin was rated a "4" for attendance and punctuality. Am. Compl. at ¶ 83.  In his supervisor's review, the only comment read: "had to change start time twice to be able to get to work on time." Id. at ¶ 84.  This comment by the supervisor conflicts with Mr. Morin's Amended Complaint, in which he alleges that the second time change was for convenience of the Town: he did not request it.  Am. Compl. at ¶¶ 85,86.  The Town knew that Mr. Morin's original start time was modified to ensure that he could board his daughter onto her special needs bus. Id. at ¶ 86.  Further, there are no additional comments that Mr. Morin did not come to work on time.  Instead, the Town made a second adjustment based on its own needs, yet included that as a reason for the low performance score.

    Additionally, the Town employs another man, Will Young, who works in the same Department and is subject to the same rules, but does not have a relative with a disability. Am. Compl. at ¶ 88-90.  Mr. Morin alleges that Mr. Young would clock in for other employees, thus breaking the time attendance rules. Id. at ¶ 90.  Mr. Young was not reprimanded for his conduct. Id.  Mr. Morin did arrive one minute late after dropping

11

off his child at the school bus, which required the initial 15-minute time adjustment. Id. at ¶ 73.  He missed one call when his phone was broken.  Id. at ¶ 40.

Mr. Morin has plausibly alleged that Mr. Young received preferential treatment despite being similarly situated.  They each broke a company policy. Mr. Morin was tardy to work, Mr. Young clocked in for other employees, yet only Mr. Morin was given a poor performance evaluation, fired, and not rehired under the recall provisions.  Mr. Morin asked for a change of starting time, due to his need to bring his daughter to work. Am. Compl. at ¶ 74. His employer's reaction − changing the starting time twice and then giving Mr. Morin a poor evaluation − provides support for Mr. Morin's allegations. Additionally, Mr. Morin, who is similarly situated to Mr. Young, was the only one who received both positive punishment as well as negative repercussions which provides sufficient support that the Town may have been motivated by discriminatory intent. Therefore, Mr. Morin meets the fourth prong by providing reasonable allegations that the adverse employment action occurred under circumstances which support a reasonable inference that his disabled daughter may have been a determining factor in the Town's decision.

Thus, Mr. Morin's claim for associational discrimination survives the Motion to Dismiss.

### Count Three – Perceived Disabled Discrimination in Violation of the CFEPA

Count Three of the Amended Complaint alleges a state law claim under the CFEPA for perceived disabled discrimination.  Mr. Morin claims the Town discriminated against him due to his association with a disabled individual.  Am. Compl. at ¶ 103.  The Town argues this claim fails as a matter of law because the Connecticut Appellate Court

held that the CFEPA does not create a cause of action for associational discrimination. Def. Mem. at 13, citing Demarco v. Charter Oak Temple Restoration Ass'n, Inc., 226 Conn. App. 335, 351 (2024).

Mr. Morin, in his Objection to the Motion to Dismiss, responds that Count Three contains a "cut and paste" error. Pl. Opp. at 20. He claims that "a cut and paste error" resulted in paragraph 103 reading, in part, "on account of his association with an individual with disability" . . . [instead] it should read, "on account of being perceived as disabled." Id. at 20. He notes that the heading of Count Three states, "perceived disabled discrimination claim under CFEPA." Pl. Opp. at 20 (Count Three: Perceived as Disabled Discrimination in Violation of CFEPA).

The Town replies that the court should only examine the four corners of the Amended Complaint and cannot consider new arguments raised in opposition to a Motion to Dismiss. Def's. Reply at 7. Furthermore, the Town points to the plaintiff's original Complaint which contained an identical claim and was the subject of the defendant's original Motion to Dismiss. Id.

In evaluating the plausibility of a plaintiff's claims, the court is limited to the facts stated in a complaint, documents attached as exhibits, or those incorporated by reference. See Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991). A complaint cannot be cured by a memorandum of law in opposition to a motion to dismiss. See Natale v. Town of Darien, 1998 U.S. Dist. LEXIS 2356, No. Civ. 3:97cv583 (AHN), 1998 WL 91073 at *4, n.2 (D. Conn. 1998) (plaintiff may not amend complaint in a memorandum of law) (citing Daury v. Smith, 842 F.2d 9, 15-16 (1st Cir.

1988)); see also Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc., 723 F. Supp. 976, 987 (S.D.N.Y. 1989).

Whatever merit Mr. Morin's arguments may have, it was raised in response to the Motion to Dismiss and, thus, cannot be considered as within the Amended Complaint. See Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc., 810 Fed. Appx. 17, 20 (2d. Cir. 2020) (holding a party may not amend its complaint by advancing a new theory of liability for the first time in its opposition to a motion to dismiss) citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).

Mr. Morin states in the Amended Complaint that "the defendant . . . subjected plaintiff to discrimination on account of his association with an individual with disability." See Am. Compl., Count Three, ¶ 103.  His original Complaint in July of 2024 contained an identical claim.  See Plaintiff's Complaint, Count Three (Doc. No. 1).  A significant portion of the Town's first Motion to Dismiss in September of 2024 addressed this claim under CFEPA for a lack of a cause of action.  See Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss at 10.  (Doc. No. 16).  In November 2024, Mr. Morin once again pled associational discrimination in his Amended Complaint.  See Am. Compl. at 10.   Mr. Morin was on notice of the Town's arguments regarding a cause of action under CFEPA as "association of an individual with disability discrimination."  Only in the Opposition to the Motion to Dismiss did Mr. Morin address the Town's concerns and raise a new cause of action.  See Pl. Opp. at 20.  The Town argues as much.  See Def.'s Reply at 7.

Mr. Morin possessed ample time and notice to fix this error in the Amended Complaint after the Town's original Motion to Dismiss.  The court is required to examine

14

the well-pleaded factual allegations. In the Amended Complaint, the sole alleged violation of the CFEPA is discrimination on account of Mr. Morin's association with an individual with a disability, not as perceived disability discrimination. The CFEPA does not recognize claims for associational discrimination based on disability. Demarco, 226 Conn. App. at 351.

Mr. Morin cannot recharacterize his amended claim and invoke a new claim in his Opposition to the Town's Motion to Dismiss. Count Three is dismissed.

## V.    CONCLUSION

For the reasons stated herein, Town of Farmington's Motion to Dismiss (Doc. No. 27) is denied as to Count 1 and 2, but granted with regard to Count 3. The court will not permit plaintiff's counsel to rectify their lack of diligence in a third repleading after counsel already squandered both notice and opportunity for correction.

**SO ORDERED.**

Dated at New Haven, Connecticut this 16th day of September 2025.

  /s/ Janet C. Hall  
Janet C. Hall  
United States District Judge