**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| BRIAN MORIN, | : | CIVIL CASE NO. |
|     Plaintiff | : | 3:24-CV-01244 (JCH) |
|  | : |  |
| v. | : |  |
|  | : |  |
| TOWN OF FARMINGTON, | : | APRIL 28, 2026 |
|     Defendant. | : |  |
|  | : |  |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 49)**

**I.     INTRODUCTION**

The plaintiff, Brian Morin ("Mr. Morin") filed an employment discrimination suit against his former employer, the Town of Farmington ("Town"), alleging two counts under the Americans with Disabilities Act Amendments Act of 2008 ("ADA"), 42 U.S.C. § 12101.  In Count One, Mr. Morin claims that the Town discriminated against him because it regarded him as having a disability, a hernia, in violation of the ADA.  In Count Two, Mr. Morin claims that the Town subjected him to discrimination because of his association with his disabled daughter, in violation of the ADA's associational discrimination provision, 42 U.S.C. § 12112(b)(4).

Before the court is Town's Motion for Summary Judgment as to both counts. See Defendant's Motion for Summary Judgment ("Motion") (Doc. No. 49); see also Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem.") (Doc. No. 50).  Mr. Morin opposes the Motion.  See Plaintiff's Memorandum of Law in Support of Objection to Defendant's Motion for Summary Judgment ("Pltf.'s Opp'n.") (Doc. No. 55-1).  The Town replied in support of its Motion.  See Defendant's Reply Memorandum of Law ("Def.'s Reply") (Doc. No. 56).

1

For the reasons stated below, the court denies the Town's Motion for Summary Judgment.  (Doc. No. 49).

## II.    BACKGROUND[1]

In October 2015, the plaintiff, Brian Morin, was hired by the Town of Farmington as a Building Maintenance Maintainer.  See Mr. Morin's 56(a)(2) at ¶ 1.  Mr. Morin's immediate supervisor was the Building Maintenance Foreman, Dave Kaseta, who reported to the Highway & Grounds Superintendent, Scott Zenke.  Id.  In 2019, following Mr. Kaseta's retirement, Mr. Morin was promoted to Building Maintenance Foreman; he reported directly to Mr. Zenke.  Id. at ¶¶ 3, 4.  Before becoming Foreman, Mr. Morin asked Mr. Zenke if he would be on call after hours, and Mr. Zenke told plaintiff: "answer the phone as much as you can. If you don't answer, they will call me, and I'll handle it."  See AMF at ¶ 4.

The Town hired William Young as a Building Maintenance Maintainer who reported to Mr. Morin.  See Mr. Morin's 56(a)(2) at ¶¶ 3,4.  The Foreman job entailed being on call and responding to emergency situations in buildings, including power failures and plumbing issues.  Id. at ¶¶ 5, 6.  When Mr. Kaseta was Foreman, Mr. Kaseta handled all after hours calls; when Mr. Morin was promoted to Foreman, he was the first person called for after-hour calls.  Id. at ¶ 7.  In November 2020, Jim Ruzbasan was hired as the new Superintendent and Mr. Morin's immediate supervisor.  Id. at ¶ 8. Mr. Morin was provided with a Town cell phone and was expected to answer it for the few emergency calls each year.  Id. at ¶ 10.  Mr. Morin attended a meeting in December

---

[1] The following facts are drawn from Mr. Morin's Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment ("Mr. Morin's 56(a)(2)") (Doc. No. 55-5) as well as Mr. Morin's Additional Material Facts ("AMF").

2020, where overtime and emergency calls were discussed.  Id. at ¶ 11.  At this meeting, an incident was discussed involving a gas leak; Mr. Morin was sleeping when called and did not answer his phone.  Id. at ¶ 12.  Mr. Morin was counseled regarding the proper protocols to be accessible and responsive to after hour calls.  Id. at ¶ 13.  In November 2021, Mr. Morin, along with his supervisors and the union president, attended a meeting regarding performance concerns and his responsiveness.  Id. at ¶ 14.  During the November 2021 meeting, Mr. Morin was asked about a missed call; however, Mr. Morin was working on siding on a ladder.  Id. at ¶ 15.  Mr. Morin said that he responded to the call right after he came down from the ladder and called the individual back.  Id. at ¶ 16.  Additionally, Mr. Morin discussed occasions where he had been on vacation and received a call.  Id. at ¶ 17.  A supervisor, Ms. Krajewski, addressed how such notifications would be handled.  Id.  Mr. Morin was advised to email Mr. Ruzbasan, Mr. Arnold, Mr. Young, Ms. Krajewski, and the department heads that oversee buildings.  Id. at ¶ 18.   Finally, Mr. Morin and the other attendees discussed three personal calls which he made during the workday and how they may have impacted his ability to work efficiently.  Id. at ¶ 19.  Mr. Morin's start time was changed to 7:15 am.  Id. at ¶ 21.  Mr. Morin's punctuality and attendance did not require improvement.  See AMF at ¶ 6.

Following this meeting, Mr. Morin felt that Mr. Ruzbasan was targeting him.  See Mr. Morin's 56(a)(2) at ¶ 22.  Additionally, Mr. Morin felt there was a personality conflict between him and Mr. Arnold, Director of Public Works, and that Mr. Arnold wanted to get rid of Mr. Morin because Mr. Morin stood up for himself.  Id. at ¶ 23.

On December 1, 2021, a heated discussion occurred between Mr. Morin and Mr. Ruzbasan where Mr. Morin believed that the office staff should receive workday problem calls and Mr. Ruzbasan said that, if Mr. Morin spent half the time working instead of trying to get out of work, then Mr. Morin would not be in this position.  Id. at ¶ 24.  On December 6, 2021, Mr. Morin emailed Ms. Krajewski asking whose responsibility it was to notify other departments when he was on vacation or unavailable; Ms. Krajewski and Mr. Arnold responded saying that it was Mr. Morin's responsibility to notify department heads of his vacation or change in availability.  Id. at ¶ 25.

On January 5, 2022, Mr. Morin reported a work-related injury and was diagnosed a couple weeks later with a hernia; he was issued lifting restrictions and scheduled a surgery in mid-February.  Id. at ¶ 28.  Following his surgery, Mr. Morin was out of work for six weeks and returned to work at full duty on March 30, 2022.  Id. at ¶ 29.  The episodic hernia pain bothers Mr. Morin to this day.  See AMF at ¶ 5.

Mr. Ruzbasan scheduled weekly meetings with Mr. Morin and Ms. Krajewski to review weekly tasks and responsibilities of the Building Department.  See Mr. Morin's 56(a)(2) at ¶ 31.  During these meetings Mr. Morin provided handwritten notes of the work to be performed, and Mr. Ruzbasan reviewed the work and identified more efficient work.  Id. at ¶ 34.  These meetings sometimes became heated, with Mr. Morin being told the goal was to improve communication and efficiency and Mr. Ruzbasan being told to keep his emotions in check.  Id. at ¶ 36.  Other employees also met with Mr. Ruzbasan weekly and sent their own work schedule.  Id. at ¶ 37.  Ms. Krajewski continued attending the weekly Building Department meetings with Mr. Ruzbasan.  Id.

at ¶ 38.  After months of meetings, Ms. Krajewski issued Mr. Morin a memorandum outlining concerns regarding Mr. Morin's time management and concerns about his work; however, Mr. Morin testified that the Town wanted him to do 40 hours of work plus additional work in the same 40 hours.  Id. at ¶ 39.  Later that summer, the Building Department was restructured, and Mr. Young was reclassified into a new position, leaving Mr. Morin as the only member of the Building Maintenance Department.  Id. at ¶ 40.

On February 4, 2023, Mr. Ruzbasan received a call from a Police Department client with a no heat report; the Department was unable to reach Mr. Morin.  Id. at ¶ 41.  Mr. Ruzbasan and Mr. Young responded to the call.  Id.  On that same day, Mr. Ruzbasan received a call saying that a housing unit had no heat and a call had been made to Mr. Morin with no answer.  Id. at ¶ 42.  Mr. Morin's phone was not working properly on February 4, and he had notified the Town that he would not be able to respond to such a call without first finding someone to watch his daughter.  Id.

As Town Manager, Ms. Blonski is responsible for submitting proposed budgets, and in February 2023, the Town Council gave Ms. Blonski a 2% budget increase.  Id. at ¶ 45, 46.  In order to reach this smaller than usual target, Ms. Blonski and the Director of Finance and Administration, Mr. Swetcky, believed they would have to eliminate positions.  Id. at ¶ 47.  Ms. Blonski was advised that the work Mr. Morin was being paid to do could be done more cost efficiently by outsourcing, so Ms. Blonski suggested eliminating two full-time positions, one seasonal employee, and numerous part time positions.  Id. at ¶ 49.  One of the full-time positions was Mr. Morin's position.  Id.  Mr. Morin was notified on March 9, 2023, about the elimination of his position.  Id. at ¶ 50.

Mr. Morin was not given any explanation regarding why his position was eliminated. See AMF at ¶ 8. When Mr. Morin asked who was performing his job, the Town replied, "We don't have to tell you." Id. at ¶ 9.

At the time of his layoff, Mr. Morin did not possess a valid CDL. See Mr. Morin's 56(a)(2) at ¶ 51. On January 20, 2023, the Town posted a vacancy announcement for the Capital and Highway Project Leader II position, which posting allowed up to 1 year for a person to obtain a CDL. Id. at ¶ 52. The position was not filled until May 30, 2023, at which time, Mr. Young was promoted into the position. Id. at ¶ 54.

In May of 2024, Mr. Morin was notified that a Capital and Highway Project Leader I position was available, and Mr. Morin notified the Town that he wanted the position. Id. at ¶¶ 12; 55. Mr. Morin had spoken to the Union President about the job opening. See AMF at ¶ 11. The Union contacted the Town about the position and the Union reported to Mr. Morin that the Town "just wanted to move forward, and they wanted to offer me a settlement, and we'll see what happens." Id. at ¶ 11.

The position required a CDL, which Mr. Morin had obtained before the position was taken down. Id. ¶ 56. The Town informed Mr. Morin that it was no longer going to fill the position. Id. at ¶¶ 11, 55. At least one other similar Foreman position, which had been posted by the Town, had been held by a foreman for over a year without having a CDL. Id. at ¶ 57.

Mr. Young was promoted to the Capital and Highway Project Leader II position. Id. at ¶¶ 13, 54. Mr. Young does not have a disability nor does he have a child with a disability. Id. at ¶¶ 13, 14. The Town remarked that "our position is that we are going

6

back to the old job description, which was CDL required, not up to one year to get a CDL, and we filled that position." Id. at ¶ 15.

Mr. Ruzbasan, Ms. Krajewski, and Mr. Arnold were on notice no later than December 4, 2020, that Mr. Morin had a special needs daughter, that he was her sole caregiver, and that he needed to care for his daughter after hours. See Mr. Morin's 56(a)(2) at ¶ 59.

## III.   STANDARD OF REVIEW

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." See Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations cannot create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." See LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV.    DISCUSSION

### A.  Count One: Mr. Morin Regarded as Disabled

In Count One, Mr. Morin alleges, that the Town discriminated against him in violation of the ADA because it regarded him as having a disability (hernia).  See Complaint, Count One (Doc. No. 1).  To establish a prima facie case under the ADA, Mr. Morin must show: (1) the Town is covered by the ADA; (2) Mr. Morin suffers from or is regarded as having a disability; (3) Mr. Morin was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) Mr. Morin suffered an adverse employment action because of his disability or perceived disability. See Kinneary v. City of New York, 601 F.3d 151, 155–56 (2d Cir. 2010).  The Town does not dispute that it is covered by the ADA, nor that Mr. Morin was qualified for his position as a Foreman.  See Pltf.'s Opp'n. at 13.

Under the McDonnell Douglas framework for analyzing employment discrimination claims, the court first inquires whether plaintiff has asserted a prima facie case of discrimination against defendants; once plaintiff makes out a prima facie case of discrimination, defendants have the burden of showing legitimate, nondiscriminatory reason for their actions, and plaintiff then has the opportunity to prove, by a preponderance of the evidence, that legitimate reasons offered by defendants were not true reasons for a defendant's actions, but were a pretext for discrimination or at least one of the motivating factors.  See  Bart v. Golub Corp., 96 F.4th 566, 574-75 (2d Cir.), cert. denied sub nom. The Golub Corp. v. Elaine Bart, 145 S. Ct. 173 (2024).

The ADA states that an individual is regarded as disabled if he has been subjected to a prohibited action based on an actual or perceived physical or mental impairment, whether or not the impairment limits or is perceived to limit a major life

8

activity.  See 42 U.S.C. § 12102(3)(a).  The "regarded as" definition does not apply to impairments or injuries that are both "transitory and minor," typically impairments with an actual or expected duration of 6 months or less.  See 42 U.S.C. § 12102(3)(b).  The Town argues that Mr. Morin's hernia was transitory because he returned to full duty within a few months and was able to perform all parts of his job.  See Def.'s Mem. at 17-18.

Mr. Morin responds that his hernia was not transitory or minor.  See Deposition of Mr. Morin at 151-152 (Doc. No. 55-2).  Mr. Morin's hernia limited his ability to bend or climb; and he continues to suffer from chronic pain from the hernia.  Id. at 152.  He returned to his work after a few months of light duty.  Id. at 151-153.  Mr. Morin testified that his pace was slower, and pain hampered his ability to work at his previous speeds, but he still completed his work.  Id.  Viewing these assertions in the light most favorable to Mr. Morin, his hernia was a non-trivial and non-transitory impairment which lasted for more than six months.

Turning to the issue of the Town regarding Mr. Morin as disabled, whether an individual is "regarded as" having a disability "turns on the employer's perception of the employee" and is therefore "a question of intent, not whether the employee has a disability." See Colwell v. Suffolk Cnty. Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998) (citing Francis v. City of Meriden, 129 F.3d 281 (2d Cir. 1997)).  The Town argues that the relevant decisionmaker, Ms. Blonski, did not regard Mr. Morin as disabled.  See Def.'s Reply at 2.  However, Mr. Morin testified that both Mr. Ruzbasan and Ms. Krajewski, his supervisors, with direct input into assessments of Mr. Morin's performance that ultimately informed Ms. Blonski's decision to eliminate Mr. Morin, were

fully aware of his hernia, surgeries, and subsequent limitations.  See Mr. Morin Deposition at 153; see Staub v. Proctor Hospital, 562 U.S. 411, 419 - 420 (2011) (even when person who made adverse employment decision was not personally motivated by discriminatory animus, animus of another agent of employer can be attributed to employer if that agent's animus was proximate cause of adverse action).  There is an issue of material fact as to whether the decision maker for the Town "viewed" Mr. Morin as disabled under Staub.

The Town argues that there existed performance concerns about Mr. Morin before the hernia surgery, and therefore his hernia surgery is not connected to the subsequent elimination of Mr. Morin.  See Def.'s Reply at 2-3.  However, Mr. Morin raises issues of material fact if some of the actions taken after the hernia and subsequent disability were motivated in part by the Town's perception of Mr. Morin.  The sequence of events leading to Mr. Morin's discharge supports an inference of disability discrimination.  See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001).  Mr. Morin has come forward with evidence that Mr. Ruzbasan did not micromanage Mr. Morin until after the hernia surgery.  See Mr. Morin's 56(a)(2) at ¶¶ 31, 39.  Mr. Morin testified that Mr. Ruzbasan "took Will [Young] away from [him], and would not allow me to have anyone assist me," and Mr. Morin testified this happened only after his surgery.  See Mr. Morin's Deposition at 164.  Additionally, Mr. Morin produces evidence that his start time was not changed twice due to his inability to arrive at work on time: that second time adjustment was made by the Town for its own reasons, not for Mr. Morin's lack of punctuality.  See Mr. Morin's 56(a)(2) at ¶ 26.  There

are issues of material facts as to the causal connection of the hernia and Mr. Morin's elimination.

The Town asserts a nondiscriminatory reason for Mr. Morin's firing: the Town Manager, as directed by budgetary concerns, eliminated certain positions purely to achieve a targeted 2% budget increase, which was much lower than expected, thus leading to the necessary eliminations. See Mr. Morin's 56(a)(2) ¶¶ 48-49. The burden shifts back to Mr. Morin to demonstrate that the justification is pretextual or that discrimination was a motivating factor. See Bart v. Golub Corp., 96 F.4th 566, 578 (2d Cir.), cert. denied sub nom. The Golub Corp. v. Elaine Bart, 145 S. Ct. 173 (2024).

First, the Collective Bargaining Agreement required the Town to notify Mr. Morin of any open position for which he was qualified and to afford him an opportunity to accept or decline it before hiring a new employee; however, the Town never provided notification to Mr. Morin. See Def.'s Interrog. Resp. No. 21 (Doc. No. 55-4). Evidence of a violation of the procedures set forth in a bargaining agreement suggests discriminatory intent. See Brown v. Waterbury Bd. of Educ., 247 F. Supp. 3d 196, 212 (D. Conn. 2017). Second, Mr. Morin spoke to the union president regarding the job posting for the Capital and Highway Project Leader II position; however, the union reported back that the Town "just wanted to move forward, and they wanted to offer [Mr. Morin] a settlement and, then we'll see what happens." See AMF at ¶ 11. William Young was promoted to this position. Id. at ¶ 13. Mr. Morin pursued the Capital and Highway Project Leader I position and, after obtaining his CDL, was told that the Town was no longer going to fill the position. Id. at ¶ 12. There exist significant material

issues of fact regarding pretext or discrimination as a motivating factor.  Therefore summary judgment on Count One is denied.

    B. Count Two: Association with a Disabled Individual

    Turning to Count Two, Mr. Morin argues that the Town discriminated against him based on his association with his disabled daughter.  See Complaint at Count Two. Under the ADA, "a plaintiff must first make out a prima facie case by establishing: 1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision."  See Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 432 (2d Cir. 2016).

    Mr. Morin argues he was qualified for the Foreman position and later for the Capital and Highway Project Leader position he sought.  See Pltf.'s Opp'n. at 19.  The Town does not dispute that Mr. Morin was qualified for the Foreman position; however, it does dispute Mr. Morin's qualifications for the Project Leader Positions as to the CDL license.  See Mr. Morin's 56(a)(2) at ¶¶ 52, 53.

    Mr. Morin was "eliminated from his position of Building Maintenance Foreman" on March 9, 2023.  See id. at ¶ 50.  Mr. Morin notified the Town he desired the Capital and Highway Project Leader I position on May 30, 2024, after Mr. Morin obtained his CDL; however, the Town told Mr. Morin that it was no longer going to fill the position.  Id. at ¶ 55.  Mr. Morin argues these both are adverse employment actions.  See Pltf.'s Opp'n. at 19.

12

The Town argues that Ms. Blonski, the decision maker in firing Mr. Morin, did not know of Mr. Morin's daughter's disability.  See Def.'s Mem. at 23.  Mr. Morin argues that his supervisors knew of his disabled daughter and were ultimately responsible for writing the poor evaluations which led to his firing.  See Pltf.'s Opp'n. at 19-20.  Mr. Ruzbasan, Ms. Krajewski, and Mr. Arnold were all on notice of Mr. Morin's daughter's disability no later than December 4, 2020.  See Mr. Morin's 56(a)(2) at ¶¶ 1, 2, 59.  Ms. Krajewski "does not recall" Mr. Morin speaking regarding his daughter's needs; however, this is not a denial.  Id. at ¶ 59.  Additionally, in November of 2021, during a meeting with Mr. Ruzbasan and Ms. Krajewski, Mr. Morin explained he was late due to his disabled daughter's bus.  Id. at ¶ 20, see also AMF at ¶¶ 1,2.

Associational discrimination does not require that the ultimate decisionmaker know of the disability association; if someone within the chain of decision makers knew and was relied upon, the adverse employment decision is attributed to the employer. See Staub v. Proctor Hospital, 562 U.S. 411, 419 - 420 (2011) (even when person who made adverse employment decision was not personally motivated by discriminatory animus, animus of another agent of employer can be attributed to employer if that agent's animus was proximate cause of adverse action).   Mr. Morin's supervisors knew of his daughter's disability and, in a job evaluation, rated Mr. Morin with a low score for punctuality, claiming that the start time had to be changed twice for Mr. Morin to arrive at work on time.  See Mr. Morin's 56(a)(2) at ¶¶ 20, 21, 26; see also Pltf.'s Opp'n at 19-20.  There is an issue of material fact regarding whether the Town had knowledge of Mr. Morin's daughter's disability.

13

A reasonable jury could infer from multiple bases that Mr. Morin's association and care for his disabled daughter was a determining factor in his firing. For example, Mr. Morin explained that he was late when he arrived after 7am to ensure his daughter embarked on her bus at 6:45 am. See Mr. Morin's 56(a)(2) at ¶ 19; see also AMF at ¶¶ 1,2. Later, Ms. Krajewski changed Mr. Morin's arrival time to 7:30, to enable Mr. Morin's ability to arrive for work on time, and Ms. Krajewski counseled Mr. Morin on his poor work performance. Id. at ¶ 26. However, Mr. Morin did not ask for his start time to be changed nor did he need it: the time change was made for the convenience of the Town. Id. Mr. Morin informed his supervisors that, before any after-hours calls, he needed to arrange care for his special needs daughter. Id. at ¶ 42.

Mr. Morin points to William Young, another employee, regarding disparate treatment. Mr. Morin was disciplined for being late for work after ensuring his daughter was on the school bus. See Mr. Morin's 56(a)(2) at ¶ 19. Mr. Young was promoted to Capital and Highway Project Leader II and does not have a disability, nor a child with a disability. See AMF at ¶ 15.

Finally, Mr. Morin asserts that the Capital and Highway Project Leader I position was not filled. Id. at ¶ 12. Mr. Morin notified the Town that he wanted the position and obtained his CDL. Id. Mr. Morin was then told that the Town was no longer going to fill the position. Id.

There are issues of material fact that, if proven, would support a finding that the Town's stated budget justification for eliminating Mr. Morin's position and for not hiring him again when qualified was pretextual. A reasonable jury could find that Mr. Morin's

14

association with his disabled daughter was at least one motivating factor in his firing.

Therefore, the court denies summary judgment as to Count Two.

## V.       CONCLUSION

For the reasons outlined above, the court denies the Town's Motion for Summary

Judgment.  (Doc. No. 49).

## SO ORDERED.

Dated at New Haven, Connecticut this 28th day of April 2026.


    /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge